NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EDWARD WHEELER, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 06-CV-5207 (DMC) |
| TOWNSHIP OF EDISON AND JUN CHOI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS MAYOR OF THE TOWNSHIP OF EDISON, | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment pursuant to FED. R. CIV. P. 56 by Defendants Township of Edison ("Township") and the Township's Mayor, and Public Safety Director, Jun Choi ("Choi," and collectively, "Defendants"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for summary judgment is **granted**; and Edison Police Department (the "Department") Sergeant Edward Wheeler's ("Plaintiff") cross-motion for a spoliation charge or inference against Defendants is **denied**.

## I.    BACKGROUND[1]

Plaintiff claims that the Township and Choi promoted two police officers to the position of Lieutenant because of political considerations and that he was not promoted because of Plaintiff's "whistleblowing" during Choi's mayoral campaign. The First Count of the Complaint

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

alleges "political patronage" in violation of the First Amendment to the Constitution of the United States and Article I of the New Jersey Constitution. The Second Count of the Complaint alleges illegal retaliation against Plaintiff for whistleblowing in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq*.

Plaintiff alleges that he publicly supported Choi's opponents in both the 2005 primary election and the 2006 general election, donating funds to Bill Stephens, who was Choi's opponent in the 2006 election. The Complaint does not allege that a decision was made not to promote Plaintiff because of his political activities or his political affiliation, but rather that "politics was the important factor used by Choi in making promotions" and that the two officers promoted to Lieutenant were "two strong Choi supporters . . . rewarded with promotions."

The Complaint also alleges that Plaintiff was not promoted in retaliation for his reporting to supervisors that "he had a reasonable basis to believe that police officers employed by the Township and then mayoral candidate Choi were encouraging, aiding and abetting individuals to commit disorderly persons offenses to secure Choi's election as Mayor." Specifically, the Complaint alleges that Plaintiff, in investigating Brian Smith, "a very active and loyal Choi supporter" who was arrested for tearing-down a campaign sign, stated that several Edison police officers tacitly approved the vandalism and that one Edison police officer to whom he admitted his crime "told him to go inside and not to worry about it." The Complaint further alleges that Smith "actually implicated Choi as ordering removal of opposition campaign signs."

Because Smith implicated police officers in wrongdoing, Plaintiff alleges that he notified his superior officer, who in turn contacted the Chief of Police. The Chief directed Plaintiff to continue with his investigation. The Complaint alleges that the "Head of Internal Affairs" soon

arrived and "seemed annoyed with Plaintiff." "This incident was never released to the press," Plaintiff contends, because the internal affairs officer claimed that "the Prosecutor's office ordered a media blackout of the arrest and allegations so as not to affect the election." The Complaint alleges that the internal affairs investigation did not begin until well after the election, that all officers were ultimately exonerated from wrongdoing and that the "head of Edison internal affairs" appeared in a photograph taken at Choi's campaign headquarters in the Star Ledger on the day after the election, thereby "identif[ying] him as a Jun Choi supporter." The Complaint alleges that, on the day of Smith's trial in municipal court, the municipal prosecutor "advised that the lawyer for Smith had in his possession two affidavits," including "one from Jun Choi saying he gave Brian Smith permission to take down the opposition sign . . . because there was no permission to place it there." No such affidavit has been produced in discovery, nor has any individual claiming personal knowledge testified to its existence.

The Complaint alleges impropriety in the municipal prosecution against Smith because Plaintiff "had Stephens and his campaign manager Joe Rusomano on stand by to testify that they did in fact seek and have permission to place the sign" and that despite Plaintiff's telling the municipal prosecutor that "he wanted the Mayor and owner of the Clarion [where the sign was vandalized] to testify," Smith was permitted to plead guilty.

The Complaint further alleges that the officer who "apparently hindered the apprehension of Brian Smith was made Vice Chair of the Edison Democratic Organization" and has since "made comments to fellow officer [sic] that Plantiff and his Lieutenant 'would get theirs' or words to that effect." Discovery has yielded no competent evidence of such comments.

A.    <u>The Promotions</u>

Shortly after Choi was elected Mayor, he announced that there would be promotions in the Department. Plaintiff alleges that Choi committed numerous violations of the ordinance governing such promotions to the rank of Lieutenant.

The ordinance, codified as Section 2.96.420 of the Edison Municipal Codebook, provides:

> Promotional criteria-Sergeant to lieutenant
> A. Qualifications.
>> 1. The candidate must have a minimum of three years in grade as sergeant
>> to be eligible for promotion to lieutenant.
>> 2. The candidate must be recommended to the command staff for promotion, in writing, by his or her immediate supervisor or his or her division commander.
> B. Command Staff Review.
>> 1. The command staff will consist of all sworn members of the Edison
>> police department at the rank of captain and above.
>> 2. Each member of the command staff will have one vote in a majority rules
>> system. The person nominated by the command staff for promotion must be approved by the director of public safety. In the event of a tie vote, the director of public safety will make the final decision in conformity with applicable sections of Titles 40 and 40A.
> C. Promotional Procedure.
>> 1. The command staff will meet and discuss the names of all candidates
>> recommended for promotion.
>> 2. The command staff will consider seniority, job performance, attendance
>> and a review of the candidate's personnel file.
>> 3. After review, the command staff will vote on the candidates and present
>> its results to the director of public safety. The director of public safety will
>> then have final approval on the candidate for promotion.

4

(Ordinance, Exhibit B)

The process began with Choi issuing a memo to Chief Mieczkowski, which requested that the command staff convene and provide him with two promotional lists, one consisting of Lieutenants eligible for promotion to the rank of Captain and the other consisting of "no less than 9 eligible candidates to be considered for promotion from the rank of Sergeant to Lieutenant. The command staff shall strictly follow section 2.96.420 of the Edison Municipal Code Book. . . . All proceedings will be video recorded in order to protect the Township of Edison, should the process be contested at a later date." Two days later, Chief Mieczkowski sent Choi a memo with the results of the command staff's vote. Eight Sergeants were listed as recommended for promotion to the rank of Lieutenant. Sergeants McElwain and Kirsch received nine votes each; Sergeants Berrue, Shannon and Stein received eight votes each; Plaintiff received seven votes; Sergeant Marcantuono received four votes and Sergeant Gesell received two votes. Of the eight Sergeants on the list, Choi selected Shannon and Marcantuono for promotion to the rank of Lieutenant. Marcantuono actively supported Choi's 2005 election campaign, volunteering his time to help the campaign and publicly supporting Choi's candidacy. To Choi's knowledge, however, Shannon did not actively support his campaign.

Prior to making promotions as Director of Public Safety, Choi discussed the Department's needs with all members of the command staff. He also reviewed literature that he considered relevant, including a book covering "best practices" in police work. Before making the promotions, Choi also consulted with retired Chief Rick Richardella from the New Jersey Department of Community Affairs.

5

When reviewing the list of candidates for promotion, Choi focused on the competence and leadership abilities of the candidates as well as the Department's needs. He was not concerned with the number of command staff votes that each candidate received, as he had directed the Chief to present a list of officers eligible for promotion and he expected the command staff to present the names of only those officers fit for the position. While Choi considered all of the officers on the list to be eligible for promotion, he felt that the officers he selected were the best candidates based on their qualities and the Department's needs.

Choi promoted Shannon and Marcantuono to the rank of Lieutenant to effectuate a smooth transition within their respective departments. He previously promoted Captain Ron Gerba to the position of Deputy Chief. Gerba had been a vocal Stephens supporter, Choi's opponent in the election. Gerba's political affiliation was of no moment to Choi, as his competence, leadership abilities and experience as Traffic Captain made him the most qualified candidate for the position.

Gerba's promotion from Traffic Captain to Deputy Chief created a void in the Traffic Division. Choi promoted Lieutenant Dauber, who was the Traffic Lieutenant, to the position of Traffic Captain. Sergeant Marcantuono was promoted to Traffic Lieutenant because he had extensive experience as a Sergeant assigned to the Traffic Division.

When Choi promoted Patrol Lieutenant Matthew Freeman to Captain, Sergeant Shannon was promoted to Patrol Lieutenant because of his experience working in the Patrol Administrative Office.

The Complaint alleges that, in making the promotions, Choi violated a "Court Order to have the Director of Public Safety review all personnel files before making any promotions." Discovery, however, has failed to reveal a court order to this effect. The Complaint alleges that the promotional process was improper because "the entire proceedings" of the command staff deliberations were not videotaped, Choi did not promote in the order of the "ranking" of the candidates and Marcantuono was promoted despite having received only four votes, which was less than a majority of the command staff.

At deposition, Plaintiff opined that the promotional ordinance was violated because Marcantuono only received four votes of the command staff. He discussed this concern with his union representative, but no legal action was taken. Plaintiff did not challenge the promotions through an Action in Lieu of Prerogative Writs pursuant to N.J. Ct. R. 4:69 or any other legal action prior to the filing of this Complaint on October 30, 2006, more than eight months after the promotions were made.

B.     Brian Smith's Arrest and Subsequent Internal Affairs Investigation

While Choi did not know Plaintiff personally before taking office, he did learn at some point after the election that Plaintiff had been involved with Smith and the juvenile's arrest. Choi did not learn, however, that an internal affairs investigation occurred until after he was served with the Complaint filed by Plaintiff in the fall of 2006.

Plaintiff's involvement in Smith and the juvenile's arrests had no bearing on Choi's promotional decisions. His reports to superiors of possible misconduct of other Edison officers could not have influenced the promotional decisions Choi made in February 2006, as Choi did

not learn of such reports until he was sued more than eight months later.

**II.    STANDARD OF REVIEW: FED. R. CIV. P. 56 SUMMARY JUDGMENT**

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III.  DISCUSSION

    A.  The First Count of the Complaint is Dismissed Because Plaintiff Has Failed as a Matter of Law to Establish a Political Patronage Claim

Political patronage is a practice "as old as the American Republic." Boyle v. County of Allegheny Pa., 139 F.3d 386, 394 (3d Cir. 1998). The Supreme Court of the United States, however, has set limits on its use, emphasizing that "[t]o the victor belong only those spoils that may be constitutionally obtained." Rutan v. Republican Party of Ill., 497 U.S. 62, 64 (1990). The Court first enunciated these constitutional constraints in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), holding that it is a violation of the First Amendment to the Constitution of the United States to terminate public employees' employment because of their political affiliation, unless their positions involve policymaking. See Elrod, 427 U.S. at 359, 373; Branti, 445 U.S. at 513-17. Generally, "an employee's exercise of First Amendment rights outweighs the government's interest in maintaining a system of political patronage." Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997) (citing Elrod, 427 U.S. at 372-73; Branti, 445 U.S. 514-15). "Policymaking" jobs, however, are carved-out as an exception because political loyalty is essential by definition to the employment. See Boyle, 139 F.3d at 394.

In Rutan, the Court extended the Elrod-Branti doctrine to hold that the First Amendment protects public employees, not only from politically motivated discharge, but also from politically-motivated non-promotion and transfer and/or recall of other employees after an aggrieved employee has been laid-off. See 497 U.S. at 75.

The facts in Rutan contrast greatly from the current case. In Rutan, the plaintiffs alleged that, following imposition of a freeze on the hiring of new employees, filling vacant positions or

creating new positions without the Governor's Office's express permission, requests for such express permission had become routine and were only granted for the benefit of candidates who had the Republican Party's support. See id. at 65-66. Five people brought suit against various Illinois and Republican Party officials, alleging that they suffered discrimination with respect to state employment because they did not support the State's Republican Party and that this discrimination violated the First Amendment. The plaintiff worked for the State as a rehabilitation counselor since 1974. She claimed that she had been repeatedly denied promotions to supervisory positions for which she was qualified because she failed to work for or support the Republican Party. Franklin Taylor, who operated road equipment for the Illinois Department of Transportation, claimed that he was denied a promotion because he did not have the local Republican Party's support. Taylor also claimed that his employer refused to transfer him to an office closer to his home because of opposition from the Republican Party chairmen in the counties in which he worked and to which he requested a transfer. James W. Moore claimed that he had been repeatedly denied state employment as a prison guard because he did not have the Republican officials' support. The two other plaintiffs alleged that they were not recalled after layoffs because they lacked Republican credentials. See id. at 66-67.

The Supreme Court held that the plaintiffs stated legally cognizable political patronage claims. Specifically, the plaintiffs all stated a political patronage claim because they alleged a direct link between such events (or non-events) and their political affiliation or lack thereof. See id. at 75-77.

1.      Plaintiff Failed to Establish a *Prima Facie* Case of Political Patronage

The Court's decision in <u>Rutan</u> essentially reversed the district court's dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(6).  In the current case, however, the motion before this Court is a motion for summary judgment pursuant to FED. R. CIV. P. 56. While Plaintiff's ability to withstand dismissal for failure to state a claim is arguably a close question, the absence of a genuine issue of material fact to sustain his political patronage claim requires a dismissal by summary judgment.

Plaintiff does not allege that Choi did not promote him based on his support of Choi's opponents or his lack of political support for Choi, but rather that the two candidates who were promoted received such promotions due to political patronage. Specifically, the Complaint alleges that "politics was the important factor used by Choi in making promotions" and that the two officers promoted to Lieutenant were "two strong Choi supporters . . . rewarded with promotions." While such allegations asserted improper advancement of others by virtue of their political activity, the Complaint does not directly assert any improper non-advancement of Plaintiff based on his political activity or lack thereof. This distinction must be considered, however, in the context of a dispute over two promotions made from a list of eight eligible candidates.

In <u>Galli v. N.J. Meadowlands Comm'n</u>, the United States Court of Appeals for the Third Circuit developed a three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment.  <u>See</u> 490 F.3d 265 (3d Cir. 2007). To establish a *prima facie* case, a plaintiff must show that: (1) he or she was employed at a public agency in a

11

position that does not require political affiliation, (2) he or she was engaged in constitutionally protected conduct and (3) this conduct was a substantial or motivating factor in the government's employment decision. See id. Here, Plaintiff has satisfied the first two elements of this *prima facie* burden because the Police Lieutenant position does not require political affiliation and both his nonsupport of Choi and his support of Choi's opponents are constitutionally protected. Discovery, however, has failed to demonstrate that Plaintiff's political activity or lack thereof was a substantial or motivating factor in his non-promotion.

In Galli, as in Stephens and Rutan, the plaintiff presented facts which, if accepted by a jury, would have established a causal link between her political affiliation or "unaffiliation" and the adverse employment actions. "For example," the Third Circuit observed, "Galli's deposition testimony indicates that, following her termination, Commissioner Nissley allegedly stated that the Commission was 'letting Republicans go,' that 'some Democrat [obviously] wants the spot,' and that one has to 'pay to play with this administration.'" 490 F.3d at 269. Further, to discredit the Commission's asserted nondiscriminatory reason for Galli's termination, she demonstrated that, notwithstanding the Commission's claim that her layoff was part of a "reorganization" to make the Commission more efficient and cost-effective, it hired eighteen new employees in the year following these terminations. She also contended that the eighteen new hires were almost all the Democratic administration's political patrons and that many of them were unqualified. In particular, she noted that her replacement was formerly a tax attorney with no background in environmental science or education. See id. at 269, 276.

12

In the current case, Plaintiff alleges that an officer who "apparently hindered the apprehension" of a Choi supporter subsequently "made comments to [a] fellow officer [sic] that Plaintiff and his Lieutenant 'would get theirs' or words to that effect." Discovery has failed to yield competent evidence of such a statement. Even if discovery had generated competent evidence, it would not support an inference of retaliation on Choi's part, nor would it bespeak of political patronage. Plaintiff was one of eight candidates and he received fewer votes from the command staff than did five other candidates. Further, while Plaintiff alleges that Shannon and Marcantuono were Choi supporters, discovery has supported this contention only with respect to Marcantuono. Therefore, Plaintiff has failed as a matter of law to demonstrate that he would have been promoted, but for his political support of Stephens or his non-support of Choi.

> 2.  Plaintiff Failed to Present Evidence that Shannon and Marcantuono's Promotions were Pretext to Conceal a Motive to Discriminate Against Plaintiff

While a defendant need not justify its employment decisions when a plaintiff fails to establish a *prima facie* case, Choi nevertheless has presented legitimate, nondiscriminatory reasons for promoting Shannon and Marcantuono. See Swineford v. Snyder County, 15 F.3d 1258, 1270 (3d Cir. 1994). Ironically, the vacancy filled by Marcantuono was created by Choi promoting Gerba, who had been an active Stephens supporter. Discovery has generated no competent evidence that Choi's stated reasons behind his promotional decisions were pretextual. Thus, even if Plaintiff could establish a *prima facie* case, his failure to present evidence of pretext in the face of Defendant's articulated legitimate, nondiscriminatory reasons for the promotions in question would require dismissal of Plaintiff's political patronage claim as a

matter of law.

Finally, even if Wheeler compared favorably to Shannon or Marcantuono, such comparisons would not support an inference that his non-promotion resulted from political activity or lack thereof. Five other candidates were not promoted to Lieutenant, four of whom received more votes from the command staff than Plaintiff. To support an inference that he was wrongfully non-promoted, Plaintiff would have to demonstrate that he was clearly superior to not only Shannon and Marcantuono, but also the remaining five candidates on the list who were also not promoted. Moreover, even if he were to demonstrate his superiority over each of these candidates, the lack of evidence to link his non-promotion to political activity or inactivity still would be fatal to his political patronage claim.

C.     The Second Count of the Complaint is Dismissed Because Plaintiff Has Failed as a Matter of Law to Establish a Claim of Whistleblower Retaliation Under CEPA

The Second Count of the Complaint alleges illegal retaliation against Plaintiff as a "whistleblower" under CEPA, N.J.S.A. 34:19-1 *et seq.*, for his reporting of suspected illegal conduct of Edison police officers, namely encouragement and/or protection of a Choi campaign supporter who knocked over Stephens's political sign.

The New Jersey Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431, (1994); see also Dzwonar v. McDevitt, 177 N.J. 451 (2003). The statute provides:

> An employer shall not take any retaliatory action against an employee because the
> employee does any of the following:
> a. Discloses, or threatens to disclose to a supervisor or to a public body an

activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

>   (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or
>
>   (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

>   (1) is in violation of a law, or a rule or regulation promulgated pursuant to
>
>   law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care; or
>
>   (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or
>
>   (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3.

1.      Plaintiff Cannot Establish a *Prima Facie* Case Under CEPA

In order to maintain a cause of action under CEPA, a plaintiff must satisfy: (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistleblowing activity described in N.J.S.A. 34:19-3a, c(1) or c(2); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action. See Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999).

A plaintiff who brings a claim under CEPA does not have to show that his employer actually violated the law or a clear mandate of public policy. See Gerard v. Camden Health Servs. Ctr., 348 N.J. Super 516, 522 (App. Div. 2002). A plaintiff must show, however, that he "reasonably believes" that the employer violated the law or public policy. See Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000); Carmona v. Resorts Int'l Hotel, 189 N.J. 354 (2007).

In New Jersey, courts have expanded CEPA's reach to encompass complaints concerning the conduct of employees even in cases in which the employer is not complicit in such conduct. See Higgins v. Pascack Valley Hosp., 158 N.J. 404 (1999). Accordingly, when Plaintiff reported to a superior officer that Brian Smith had alleged criminal conduct by other Edison officers, while the investigation ultimately determined that Smith was not telling the truth, Plaintiff did qualify as a "whistleblower" under the meaning of CEPA.[2]

---

[2] Plaintiff does not appear to contend that his arrest of Smith or his report of suspected wrongdoing by other officers constituted protected activity for First Amendment purposes. Such contention, if advanced, would fail pursuant to Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), which holds that when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from adverse employment action.

16

Causation remains the pivotal question regarding Plaintiff's CEPA claim. The New Jersey Supreme Court has held that a CEPA claim requires: (1) a reasonable belief that the employer's conduct was violating either a law, rule or regulation promulgated pursuant to law or a clear mandate of public policy; (2) performance of a whistleblowing activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action; and (4) a causal connection between the whistleblowing activity and the adverse employment action. See Dzwonar v. McDevitt, 177 N.J. 451, 469 (2003).

Even assuming that the first two prongs have been satisfied and that Plaintiff's non-promotion from a list of eight, of which six others also did not receive promotions, constituted an adverse employment action, the causation issue remains. Regarding causation, discovery has revealed that, while Choi came to learn shortly after the election that Plaintiff was involved in Smith's arrest, which is not itself an act of "whistleblowing," it was not until after Plaintiff sued him more than eight months later that he learned about Plaintiff's report to superiors of allegations that other Edison officers may have encouraged Smith's vandalism or hindered his apprehension.

Temporal proximity is insufficient to establish causation. See Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002) (citing Bowles v. City of Camden, 993 F. Supp. 255, 263-64 (D.N.J. 1998)). Plaintiffs must "establish a factual nexus between their protected activity under CEPA and the alleged retaliatory conduct." Hancock, 347 N.J. Super. at 361. Here, Plaintiff has presented no evidence of a factual nexus between Plaintiff's protected reports of suspected coworker criminality and his non-promotion. Choi has certified that, while

17

he knew about Plaintiff's involvement in Smith's arrest shortly after the election, he was unaware that Plaintiff had initiated an internal affairs investigation with reports of suspected wrongdoing by fellow officers until after he was sued by Plaintiff. Discovery has generated no evidence to suggest otherwise. Accordingly, Plaintiff's CEPA claim must be dismissed for want of causation.

2.   Plaintiff Cannot Present Evidence of Pretext to Rebut Defendants'
Legitimate, Nonretaliatory Reasons for Plaintiff's Non-Promotion

Even if Plaintiff could establish a *prima facie* case under CEPA, satisfaction of this initial burden would only shift the burden of production to Defendants to articulate a legitimate, nonretaliatory reason for Choi's employment decisions.

CEPA claims are evaluated in accordance with the federal courts' approach to discrimination claims under Title VII of the Civil Rights Act of 1964. See Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 418 (1994); Myers v. AT&T, 380 N.J. Super. 443, 452 (App. Div. 2005). The New Jersey Supreme Court has noted that this analytical framework has been "most cogently presented," Grigoletti, 118 N.J. at 97, in the Supreme Court of the United States's seminal decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as requiring: (1) proof by plaintiff of the *prima facie* elements of discrimination; (2) production by the employer of a legitimate, non-discriminatory reason for the adverse employment action; and (3) demonstration by plaintiff that the reason so articulated is not the true reason for the adverse employment action, but is instead a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802; Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 462 (2000); Erickson v. Marsh & McLennan Co., 117 N.J. 539, 549-51 (1990).

18

In Desert Palace, Inc. v. Costa, the Supreme Court of the United States construed a congressional amendment to Title VII as redefining the quantum of evidence necessary to trigger an alternative "mixed motive" analysis of discrimination claims. See 539 U.S. 90 (2003). Under a mixed motive approach, direct evidence of discriminatory intent will shift not only the burden of production, but also the burden of proof to the defendant to demonstrate that, even if discrimination was a motivating factor in the adverse employment decision, it would have made the same employment decision regardless of its discriminatory animus. See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1096 (3d Cir. 1995).

Neither the United States Court of Appeals for the Third Circuit nor the Superior Court of New Jersey, Appellate Division has determined whether Desert Palace's relaxation of the evidentiary standards necessary to invoke the mixed motive approach applies to non-Title VII claims, such as the CEPA and First Amendment claims. See Myers v. AT&T, 380 N.J.Super. at 457-61. Nevertheless, New Jersey courts have recognized the availability of the mixed motive approach as an alternative to McDonnell-Douglas in cases in which there exists direct evidence of discriminatory motivation behind the job actions at issue. See id. at 462 (citing McDevitt v. Bill Good Builders, Inc., 175 N.J. 519, 528 (2003); Fleming v. Corr. Healthcare Solutions, Inc., 164 N.J. 90, 100-01 (2000)). Here, this Court need not grapple with the scope of Desert Palace or application of the mixed motive test, as discovery has yielded no direct evidence of discriminatory animus. In the absence of such evidence, Plaintiff's claims must survive the burden-shifting analysis of McDonnell-Douglas to withstand summary judgment.

19

While not required to do so because Plaintiff has failed to establish a *prima facie* case under CEPA, Choi has provided legitimate, nondiscriminatory reasons for his promotions of Shannon and Marcantuono. His promotion of Gerba – a former Captain and Stephens supporter – to the rank of Deputy Chief created a void in the Traffic Division which prompted the elevation of Traffic Lieutenant Dauber to Traffic Captain. Sergeant Marcantuono was promoted to Traffic Lieutenant because he had extensive experience as a Sergeant assigned to the Traffic Division. When Choi promoted Patrol Lieutenant Matthew Freeman to Captain, Sergeant Shannon was promoted to Patrol Lieutenant because of his years of experience working in the Patrol Administrative Office. Both promotions responded to the needs of the department with the advancement of qualified candidates with experience in the Divisions to which they were promoted. The facts generated through discovery have failed to call into question Choi's legitimate, nondiscriminatory reasons for his promotion of Marcantuono and Shannon. Discovery has failed to generate evidence to suggest that Choi's legitimate, nondiscriminatory reasons for the promotions of Shannon and Marcantuono are pretext for discrimination against Plaintiff. Therefore, even if Plaintiff could present proof that he was not promoted because of whistleblowing activity, his CEPA claim would still fail for lack of pretext evidence.

**D.**     Plaintiffs' Failure to File an Action in Lieu of Prerogative Writs in the Superior
         Court of New Jersey Renders His Remaining Claims Regarding the Promotions
         Non-Actionable

The Complaint alleges a number of improprieties regarding the February 2006

promotions. Most notably, Plaintiff asserts that Choi and the Township violated the applicable

promotional ordinance because Section B of the ordinance calls for a "majority-rules system" and

Lieutenant Marcantuono received only four of nine possible command staff votes. Plaintiff

argues that a true "majority-rules system" would have required elimination of Marcantuono from

the list of candidates for Choi's consideration. Conversely, Section C of the promotional

ordinance provides at subparagraph 3 that "[a]fter review, the command staff will vote on the

candidates and present its results to the director of public safety. The director of public safety

will then have final approval on the candidate for promotion." Thus, while the order of command

officer preference could be a function of "majority rule," the ultimate discretion of the Director

of Public Safety reasonably could be interpreted as superseding the preliminary command staff

vote. While reasonable minds, however, could differ over the meaning of the "majority-rules"

language in Section B of the ordinance, this Court has no jurisdiction to entertain a challenge to

the promotions based on alleged violation of a local ordinance. N.J. Ct. R. 4:69 provides the

framework for the filing of an action in lieu of prerogative writs. Most notably, N.J. Ct. R. 4:69-6

states that "No action in lieu of prerogative writs shall be commenced later than 45 days after the

accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b)

of this rule." None of the municipal acts cited in paragraph (b) of the rule covers personnel

decisions of municipalities. Accordingly, Plaintiff could have filed an action in lieu of

prerogative writs to challenge the promotions of Lieutenants Shannon and Marcantuono in February or March of 2006. He did not do so, waiting instead until October 30, 2006 to file this discrimination lawsuit.

The forty-five day period contained within R. 4:69-6 "is designed to give an essential measure of repose to actions taken against public bodies." Wash. Twp. Zon. Bd. v. Planning Bd., 217 N.J. Super. 215, 225 (App. Div. 1987). It is "aimed at those who slumber on their rights." Id. Because of the importance of stability and finality to public actions, courts do not routinely grant an enlargement of time to file an action in lieu of prerogative writs. See County of Ocean v. Zekaria Realty, 271 N.J.Super. 280 (App. Div. 1994); DeHart v. Bambrick, 177 N.J. Super 541 (App. Div. 1981).

Plaintiff did not seek to challenge the promotions as violative of the local ordinance or otherwise arbitrary and capricious. Presumably even Plaintiff's claim of political patronage could have been advanced in a prerogative writ action – without the burden of a *prima facie* case under the First Amendment cause of action he has asserted here – through the assertion that Choi's promotional decisions were arbitrary and capricious because they were based solely on political concerns. In response to such assertion, Defendants would come forward with their explanation for the personnel decisions in question. All parties would have the benefit of a decision within a few months of the challenged promotions.

Plaintiff's failure to challenge the promotions of others through an action in lieu of prerogative writs has not foreclosed all avenues of relief. If he could establish a *prima facie* case of political patronage under the First Amendment or whistleblower retaliation under CEPA, and

if he could present competent evidence of pretext to overcome the defendants' legitimate, nondiscriminatory reasons for their promotional decisions, then he would have an opportunity to convince a jury to award him damages and/or a Court to award appropriate equitable relief. Because he has failed to demonstrate a causal link between his non-promotion and either his political activity or his whistleblowing, however, and because discovery has yielded no evidence to demonstrate that Choi's reasons for the promotion of others are pretext for a motive to discriminate against him, both of his claims fail as a matter of law.

   E. <u>Plaintiff's Cross-Motion for Summary Judgment</u>

   Plaintiff filed a cross motion, requesting a spoliation charge or inference relative to Defendants' failure to produce certain information. Pursuant to L. Civ. R. 7.2 (a), "[a]rgument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both." If a party files only a certification and no supporting brief, the certification may be disregarded and sanctions imposed. <u>See</u> <u>Cannon v. Cherry Hill Toyota</u>, 190 F.R.D. 147 (D.N.J. 1999). Plaintiff's counsel filed a brief in support of his cross motion. The certifications that Plaintiff uses in support of his cross motion, however, violate L. Civ. R. 7.2 (a) because argument of the facts and the law shall not be contained in affidavits. To the extent that the certifications contain legal arguments and summations, they will be disregarded by the Court. Therefore, Plaintiff's cross motion is denied.

**IV.** <u>CONCLUSION</u>

For the reasons stated, it is the finding of this Court that Defendants' motion for summary judgment is **granted**; and Plaintiff's cross-motion for a spoliation charge or inference against Defendants is **denied**.  An appropriate Order accompanies this Opinion.


          S/ Dennis M. Cavanaugh       

         Dennis M. Cavanaugh, U.S.D.J.

Date:        April   14  , 2008
Orig.:       Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File